**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 20-2174**

───────────

WENDELL TABB,

                Plaintiff - Appellant,

      v.

BOARD OF EDUCATION OF THE DURHAM PUBLIC SCHOOLS,

                Defendant - Appellee.

───────────

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., District Judge.  (1:17-cv-00730-WO-JEP)

───────────

Argued:  December 8, 2021                  Decided:  March 2, 2022

───────────

Before NIEMEYER, MOTZ, and RICHARDSON, Circuit Judges.

───────────

Affirmed by published opinion.  Judge Niemeyer wrote the opinion in which Judge Richardson joined.  Judge Motz wrote an opinion concurring in part and dissenting in part.

───────────

**ARGUED:**  Quintin DeVon Ithiel Byrd, Q BYRD LAW, Raleigh, North Carolina, for Appellant.  Colin Alexander Shive, THARRINGTON SMITH LLP, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Monica E. Webb-Shackleford, WEBB SHACKLEFORD PLLC, for Appellant.

───────────

NIEMEYER, Circuit Judge:

Wendell Tabb, a longtime and successful drama teacher at Hillside High School in Durham, North Carolina, commenced this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, alleging that the Board of Education of the Durham Public Schools (the "School Board") discriminated against him on the basis of race in refusing to hire another teacher in the drama department to assist him with tech work in connection with his staging of student performances or, alternatively, in refusing to provide him with additional compensation for the tech work that he performs. He also alleged that the School Board discriminated against him on the basis of race when compensating him for his "extra-duty" work in connection with other events at Hillside High School.

The district court dismissed a portion of his complaint for failing to state a claim and, with respect to the remaining claims, granted the School Board's motion for summary judgment based on Tabb's failure to present sufficient evidence to support his claims.

For the reasons that follow, we affirm.

I

Tabb is employed as a drama teacher at Hillside High School in the Durham Public Schools system ("School System") and has held that position since 1987. Not only has he taught theater classes, but he has also helped students put on theatrical productions. And by all accounts, he has been extraordinarily successful, receiving numerous awards for his

2

work.  But, as he has emphasized, to produce plays at a high level requires long hours, beyond just his teaching hours.

Tabb is compensated in accordance with salary schedules established by North Carolina law.  Under those schedules, he receives a base pay, which takes into account his years of experience, level of educational achievement, and special certifications.  He also receives a local school board supplement based on his years of experience and advanced degrees.  Finally, he receives a "Performing Arts Supplement" for the extra work he does as a "Theater Director" in supporting students' extracurricular activities, such as staging student performances.

The School System pays a Performing Arts Supplement to teachers who are Theater Directors, Theater Technical Directors, Band Directors, and Dance/Music Directors. While Theater Directors and Theater Technical Directors are subject to the same State-approved teaching standards for theater arts, Theater Technical Directors have particular knowledge for teaching the technical aspects of theater productions and the skills necessary for planning, designing, and implementing lighting, sound, sets, and costumes.

Over the years, Tabb requested that the School Board and the principal of Hillside High School provide him with a Theater Technical Director to relieve him of the hours he has had to devote to technical issues when staging student performances.  He noted that some of the other high schools in the School System had both a Theater Director and a Theater Technical Director, and he requested that Hillside High School be one of them. Over the years, many of the principals at Hillside High School supported his requests,

3

including the principal during the relevant years of his complaint. The School Board, however, did not grant Tabb's requests.

Under the School System's hiring process, the School Board allocates a number of teachers to each school based on projected student enrollment numbers, and the same mathematical formula has been used for each of the high schools in the School System. But, as a general practice, the School Board does not allocate teachers to schools for specific positions or subjects. Rather, the principal of each school does the hiring and makes the assignments, taking into account mandatory core curricula, as well as the school's particular special missions and needs.

Hillside High School has an International Baccalaureate magnet program to staff, as well as a separate remedial program for lower performing students. Yet, while its principals did request larger teacher allocations during the period relevant to Tabb's complaint — 2013 to 2017 — Hillside High School did not receive an allocation sufficient for the principal to hire a Theater Technical Director. Moreover, the School Board had never allotted an additional teacher to a school specifically to serve as a Theater Technical Director. The high schools that did hire Theater Technical Directors did so with their existing teacher allotments.

Dr. William Logan, Hillside High School's principal from 2012 to well after 2017, testified that, to assist in his determination of whether to staff a technical theater class at Hillside High School, he initiated a student registration process. Indeed, he did so two to three times, but on each occasion, there was a lack of demand for such a class from the students. Accordingly, he used the allotment that he might have used for a Theater

4

Technical Director to instead hire a photography teacher.  As a result, Tabb was never provided the assistance of a Theater Technical Director to help him stage student performances.  Tabb contends that the refusal to provide him with such assistance was because he is African American and that the School Board discriminated against him on that basis.

Tabb commenced this action in August 2017 against the School Board, and he amended his complaint in October 2017, alleging that the School Board violated his rights under Title VII and § 1981 by (1) failing to staff Hillside High School with a Theater Technical Director; (2) failing to pay him a Theater Technical Director Supplement in addition to the Theater Director Supplement he was receiving, because he was doing the work of both jobs; and (3) failing to pay him for work he performed in connection with non-school related events that took place at Hillside High School.  With respect to his claim that the School System refused to pay him an additional supplement, he demanded damages of $40,800 per year.[*]

To support his claims, Tabb referred to the staffing of drama departments at three other high schools in the School System as comparators — Riverside High School, Jordan High School, and Durham School of the Arts.  He alleged that the School Board had not provided the same level of staffing to Hillside High School as it had to these three schools.

---

[*] Tabb also alleged in his amended complaint that the School Board's failure to employ a Theater Technical Director at Hillside High School and to pay him fairly for all the work he performed violated the Americans with Disabilities Act insofar as the School Board's decisions were motivated by retaliation for his 2006 lawsuit against the School Board in connection with his disabled child.  The district court dismissed that claim, and Tabb does not challenge the court's ruling on appeal.

5

As a result, he alleged, he was "forced to do the work of two or three teachers in order to maintain the Hillside High School Drama Program, while White Theatre Directors at White high schools with comparable theatre programs have had two or more teachers assigned to assist them." He alleged specifically that during the relevant period Riverside High School had two Theater Directors, one Black and one White, and one White Theater Technical Director; that Durham School of the Arts had four drama teachers, although he recognized that the school was "part of a magnet program for arts and drama"; and that Jordan High School had one Theater Director, who was a Hispanic female, although historically Jordan High School had employed more than one drama department employee. In alleging history before the relevant period, he described different hiring configurations at each of the schools, which had historically been more heavily staffed in the drama department than had Hillside High School.

Tabb also alleged in his complaint that "for many years [he] performed work *unrelated to his theatre program* at the request of Hillside administrators and at the direction of the [School System's] administration." (Emphasis added). He noted that in this regard he did work in connection with "new student orientations, open houses, senior orientations, senior pictures, class and yearbook pictures, class meetings, ring ceremonies, pageants, coronations, quiz bowls, science fairs, step shows, career and technology education events, leadership summits, awards day programs, banquets, and athletic awards ceremonies." Yet, he claimed, his "extra-duty" work went uncompensated. At the other schools, he alleged, the Theater Directors were not "asked to do this same type and volume

6

of unpaid extra work or have been paid an extra-duty payment or a contractual payment for performing this type of work."

Tabb attributed all of the disparate treatment alleged in his complaint to racial discrimination by the School Board.

On the School Board's motion to dismiss Tabb's complaint under Federal Rule of Civil Procedure 12(b)(6), the district court granted the motion to the extent that Tabb alleged that he was not paid the Theater Technical Director Supplement in addition to the Theater Director Supplement that he was receiving. The court reasoned that the School Board's "failure to pay [Tabb] a technical supplement [did] not constitute an adverse employment action" because he failed to allege that the School Board required him to perform the technical work as a condition of his employment. The court added that Tabb's "independent decision to produce high-quality plays, while laudable, was a decision he made for the benefit of his students rather than a task he performed as a requirement of his position." Alternatively, the court ruled that even if the denial of the Theater Technical Director Supplement could be considered an adverse action, Tabb had nonetheless not plausibly alleged that the School Board had "denied him a technical supplement due to his race" because he had not alleged "that a single white theater director was paid such a supplement at any time."

In its order dismissing Tabb's claim for a Theater Technical Director Supplement, the district court also excluded Durham School of the Arts as a legitimate comparator for Tabb to demonstrate any discrimination. The court noted that because the School of the Arts was a specialized high school "for arts and drama," as Tabb acknowledged in his

7

complaint, the School Board's decision to operate such a magnet school "provides an obvious alternative explanation for increased drama department staffing [there]: the school's focus on acting and drama." The court concluded, therefore, that Tabb could not plausibly allege racial discrimination "based upon different circumstances at [that school]."

With respect to the remaining allegations of Tabb's complaint, the district court denied the School Board's motion to dismiss.

After discovery, the School Board filed a motion for summary judgment with respect to all the remaining counts of the complaint, and the district court granted the motion. Addressing Tabb's claim that the School Board illegally discriminated against him in failing to hire a Theater Technical Director to assist him, the court concluded first that such a refusal, albeit attributable only to his principal (who was not sued) and not the School Board, was not in any event an adverse employment action as necessary to support a claim for discrimination. The court reasoned that the hiring of another drama teacher to assist him was not "a 'part and parcel' benefit for theater teachers in [the School System]." Rather, "the allocation of resources, including the hiring of teachers, [were] matters intended to benefit the students." The court added that, in any event, "at the time [Tabb] filed his [administrative complaint in 2016], only two out of six [School System] high schools [with drama programs] had theater techs." The court also noted that the record was undisputed that the School Board "never provided an additional theater tech allotment to another school," thus foreclosing Tabb's claim that the School Board "discriminated against him when it denied his request for an additional allotment." Finally, the court noted that Tabb had "not come forward with comparator evidence that would lead a reasonable

8

jury to conclude that [the School Board] acted with discriminatory intent toward [him]." Indeed, "the undisputed facts reveal that, during the relevant limitations period, there were no Caucasian comparators who received preferential treatment." Yet, there was another African American drama teacher at Riverside High School who did benefit from technical theater support.

With respect to Tabb's claim that the School System failed to compensate him for extra duty work, the court noted that Tabb had "failed to come forward with any evidence 'that similarly-situated employees outside the protected class received' extra-duty pay when he did not." To the contrary, the School Board offered "undisputed evidence that comparable Caucasian teachers were treated the same as [or worse than] [Tabb] when it came to extra-duty contracts and pay." The court noted that the record showed that Tabb received $11,000.07 in extra pay, and during the same period, no other performing arts teacher received more than $2,076, and Tabb offered no evidence to contradict those figures. Moreover, Tabb failed to come forward with any White comparator to support his claim that he was denied extra-duty pay due to his race.

From the district court's judgment dated September 28, 2020, Tabb filed this appeal, challenging the district court's rulings on three of his claims — (1) the refusal to pay him a Theater Technical Director Supplement; (2) the refusal to hire an additional teacher to assist him; and (3) the refusal to pay him extra-duty pay.

II

Tabb contends first that the district court erred in dismissing under Rule 12(b)(6) his claim that the School Board discriminated against him on the basis of race in not paying him a Theater Technical Director Supplement in addition to the Theater Director Supplement that he had been receiving. He claims that he is entitled to the second supplement because he also performed the work of a Theater Technical Director and that the School Board refused to pay him that supplement because he is African American.

Of course, a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim and not the truth of the facts alleged to support it. Thus, at this stage, the facts must be taken as true. But the test is not legally myopic. Rather, it must be applied with common sense to determine whether a complaint contains the "sufficient factual matter, accepted as true, to state a claim to relief *that is plausible on its face*," not merely conceivable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (cleaned up); *see also id.* (allowing "reasonable inference[s]" in assessing a complaint).

With respect to this claim, Tabb's complaint alleged that the School System's "[t]eachers in the performing arts . . . who engage in extracurricular activities" are paid a "performing arts supplement," as they "work after hours with students." The supplement is paid to Theater Directors, Theater Technical Directors, Band Directors, and Dance/Music Directors. The complaint alleged that as a Theater Director, Tabb is paid a supplement because he does in fact work after hours with students, "directing [them] in the extracurricular theatrical productions." And in doing so, as he alleged, he also "do[es] the lighting, sound, sets and other technical duties necessary" to put on the theatrical

10

productions.  He stated that since doing lighting, sounds, sets and other technical duties is the type of work performed by the Theater Technical Director, he does the "work of two teachers" and therefore should receive the supplements that two teachers would receive. He alleged, however, that the School Board "refused" to pay him two supplements and that the reason "was because of his race."

Tellingly, however, despite the detailed nature of Tabb's 39-page complaint, it failed to allege that *any* performing arts teacher in the School System, whether Black or White, received two supplements.  He does allege that teachers at other schools were not "required to work the excessive overtime hours that [he] worked," but he also does not allege that he was himself *required* to work excessive overtime hours.

The district court held that Tabb failed to state a claim based on this failure to pay him a second supplement for two reasons.  First, it noted that Tabb would be required to show that *affirmative acts of his employer* adversely affected the terms and conditions of his employment, rather than acts by him in deciding to "work harder or longer" than others, citing *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999).  Yet, the court observed that the complaint failed to make this allegation:

> Here, Plaintiff has not alleged that the technical work he performed was required as a condition of his employment; rather, he alleges only that he has worked overtime to handle "the lighting, sound, sets and other technical duties necessary to stage high-quality theater productions."  Plaintiff fails to allege that Defendant expected or required him to work these hours or to produce plays with high-quality technical features.  Plaintiff's independent decision to produce high-quality plays, while laudable, was a decision he made for the benefit of his students rather than a task he performed as a requirement of his position.

11

As a consequence, the court found that the complaint failed to allege an adverse employment action necessary to state a claim under either Title VII or § 1981. Second, the court noted that Tabb "failed to allege that a single white Theater Director was paid such a supplement at any time. Plaintiff identifies only one similarly-situated Theater Director without technical assistance, Olivia Garcia Putnam at Jordan [High School]. Putnam is white, [but] Plaintiff does not allege that she is paid a technical supplement." Again, without alleging a comparator, the court concluded that the complaint failed to state a claim.

Based on our own review of the complaint, we reach the same conclusion reached by the district court — that Tabb had failed to allege plausibly that the School Board's failure to pay him a Theater Technical Director Supplement constituted race-based employment discrimination. While the complaint certainly alleged that Tabb worked "excessively" long hours, it did not allege that those hours were mandated by the School Board as a requirement of his job. The complaint did allege that Tabb was required to "work after hours with students," but it also alleged that he was paid for after-hours work with the Theater Director Supplement. And the complaint did not allege that *any* performing arts teacher in the School System, regardless of the teacher's race, received more than one supplement.

We accordingly affirm the district court's ruling dismissing Tabb's complaint with respect to his claim that the School Board discriminated against him on the basis of his race in not paying him a second supplement for the technical work he performed in staging student performances.

12

III

Tabb also contends that the district court erred in refusing to consider Durham School of the Arts as a comparator school for purposes of his racial discrimination claims, thereby leaving only Riverside High School and Jordan High School as comparators. The court ruled that Durham School of the Arts was not an appropriate comparator to Hillside High School because Durham School of the Arts has a specialized program that is, as Tabb alleged in his complaint, "part of a magnet program for arts and drama," thus providing, as the district court concluded, "an obvious alternative explanation for its increased drama department staffing." The court apparently confirmed this conclusion by going beyond the complaint and viewing the school's website. Tabb argues that this also constituted error.

While we agree that it was error for the district court to consult the School of the Arts' website in determining whether the complaint properly alleged that the School of the Arts was an appropriate comparator, we conclude the error was harmless. *See E.I. duPont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 450 (4th Cir. 2011) ("Where a district court errs in going beyond the complaint on a Rule 12(b)(6) motion, the error is harmless if the complaint would not have withstood the motion to dismiss on its face"). Here, the complaint on its face supports the district court's conclusion that the School of the Arts' specialized focus on arts and drama would require that it have enhanced staffing to serve that mission. *See McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 588 (4th Cir. 2015) (relying on an "obvious alternative explanation" in holding that a discrimination claim had not been plausibly pleaded (quoting *Iqbal*, 556. U.S. at 682)).

13

Moreover, when granting the School Board's motion for summary judgment, the district court, on the basis of the developed record, reaffirmed that the School of the Arts was not a valid comparator, therefore confirming the harmlessness of its earlier error in looking beyond the complaint.

## IV

Tabb contends next that the district court erred in granting summary judgment to the School Board on his claim that the School Board discriminated against him based on his race in failing to hire another drama teacher to serve at Hillside High School as a Theater Technical Director. To establish a prima facie case under both Title VII and 42 U.S.C. § 1981, a plaintiff must show (1) his membership in a protected class; (2) his satisfactory job performance; (3) an adverse employment action; and (4) similarly situated employees outside the protected class who received more favorable treatment. *See Gerner v. Cnty of Chesterfield, Va.*, 674 F.3d 264, 266 (4th Cir. 2012); *see also Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 n.7 (4th Cir. 2002) (noting that "[t]he required elements of a prima facie case of employment discrimination are the same under Title VII and Section 1981").

The district court acknowledged that "[a] benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion," *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984), but concluded that the hiring of a Theater Technical Director to assist Tabb was not "'part and parcel' of employment as a high school drama teacher within [the School System]." Therefore, it reasoned, Tabb suffered no adverse

14

employment action when the school refused to hire such a teacher.  Indeed, the court noted that at the time Tabb filed his complaint, only two of six high schools in the School System with drama programs had Theater Technical Directors.

We agree with the district court.  Nothing in the record supports a claim that the terms and conditions of a drama teacher's employment by the School System included the benefit of having the School Board or a school's principal hire other teachers to assist him or her.  Moreover, doing so would be beyond the School Board's role as alleged.  The School Board allocated teachers to schools based on student population and mission needs, and each school's principal then exercised discretion about who to hire to fulfill its mission with the allocation.  There is thus nothing in this process to suggest that the School Board was doling out a "benefit" of a Theater Technical Director in a discriminatory manner.  Indeed, the district court noted that it was telling that the School Board had never provided an additional, specific allotment to any school to hire a Theater Technical Director, as Tabb requested.

In rejecting Tabb's staffing-assistant claim, the district court also concluded that Tabb failed to provide valid comparators.  While Tabb pointed to Riverside High School as a comparator and emphasized that a White drama teacher there, Kee Strong, had technical staffing help, it was also undisputed that Strong departed Riverside High School in 2015, leaving Monique Taylor, an African American woman, as the school's only drama teacher.  Because Taylor thereafter also had the benefit of technical staffing, Riverside High School was not a valid comparator for purposes of Tabb's racial discrimination claim.  Tabb also pointed to Jordan High School as a comparator, but that school had a White

15

theater teacher since 2011 who had never received a Theater Technical Director, despite her repeated requests for one.  Therefore, it too was not a valid comparator.

Tabb also sought, in a supplemental letter to the court, to support further his argument that we consider comparators in circumstances prior to the relevant period in this case.  Our consideration of the cases he cites and circumstances to which he points do not, we conclude, advance his cause.

We conclude that no reasonable jury could have returned a verdict for Tabb on his discrimination claim based on the denial of assistance, and accordingly, we affirm the district court's order granting the School Board summary judgment on that claim.

V

Finally, Tabb contends that he was discriminated against in the payment of extra-duty pay for work he performed in connection with non-theater related events that took place at Hillside High School.  His evidence on that claim, however, is lacking in two respects.  First, the record shows that from 2009 to 2019, he received over $11,000 in extra-duty pay, while the next most compensated teacher received approximately $2,076 over the same period.  More importantly, however, Tabb also failed to provide a comparator to show that he was discriminated against in the payment of extra-duty pay.  While he identified Will Holley, who is White and works in a technical theater support role at Riverside High School, the court explained that Holley was not a valid comparator because his classification under the Fair Labor Standards Act ("FLSA") made Holley "more likely to have received extra-duty pay for after-hours work" than an exempt employee such as a

16

teacher. Because Holley was not a certified teacher, but a classified employee, he was not similarly situated to Tabb. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.303(b). Accordingly, we agree with the district court that Tabb did not provide a valid comparator for purposes of supporting this racial discrimination claim.

*      *      *

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

DIANA GRIBBON MOTZ, Circuit Judge, concurring in part and dissenting in part:

Hillside High School has employed Wendell Tabb since 1987, first as a drama teacher and eventually as the Director of the Drama Department. In 2017, Tabb brought this action alleging that the school board that oversees Hillside (the "Board") discriminated against him on the basis of race and thereby violated Title VII and 42 U.S.C. § 1981.

Tabb alleges that the Board discriminated against him in three ways: (1) the Board failed to provide him extra-duty pay for work he performed at district-wide, school-sponsored events (the "Extra-Duty Pay claim"); (2) the Board failed to hire a technical director at Hillside to assist him with technical theater work (the "Technical Staffing claim"); and (3) the Board failed to pay him a supplement for the technical theater work he performed in the absence of a technical director (the "Technical Supplement claim").

Although I agree with the majority that the district court correctly granted summary judgment to the Board on Tabb's Extra-Duty Pay and Technical Staffing claims, I would hold that the court erred in dismissing his Technical Supplement claim.

I.

A.

Like the majority, I would affirm the district court's grant of summary judgment to the Board on Tabb's Extra-Duty Pay and Technical Staffing claims. In opposing summary judgment on the Extra-Duty Pay claim, Tabb identified a single comparator and offered evidence that the Board gave that comparator extra-duty pay for one district-wide event. But Tabb himself admitted in his deposition that the Board had given *him* extra-duty pay

18

for at least one district-wide event as well.[2]  With respect to Tabb's Technical Staffing claim, I agree with the majority that Tabb cannot make the required showing that having the assistance of a technical director is "part and parcel" of his employment as a theater teacher.  *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984).  That is so because the record indicates that schools do not hire technical directors to "assist" theater teachers; rather, a technical director is merely another type of teacher, on par with theater teachers, whose role is to teach and benefit students.[3]

## B.

Unlike the Extra-Duty Pay or Technical Staffing claims, Tabb's Technical Supplement claim did not make it to the summary-judgment stage.  That is so because the district court had already granted the Board's motion to dismiss the Technical Supplement claim, solely on the basis of the complaint.  But I believe that in his complaint, Tabb

---

[2] Unlike the majority, I would not hold that Tabb could not succeed on this claim solely because he has received more extra-duty pay overall than other teachers.  The total amount of extra-duty pay that Tabb received makes no difference to his discrimination claim.  Rather, what matters is that Tabb alleges that the Board denied certain requests he made for extra-duty pay *and that it did not similarly deny such requests made by white theater teachers*.

[3] I disagree, however, with the majority's suggestion that Tabb could not show that a valid comparator exists for this claim solely because a Black theater teacher at another school had the benefit that Tabb was denied.  For the purpose of a Title VII claim, it makes no difference that the plaintiff's employer happened to treat another employee of the plaintiff's race better than the plaintiff.  *Cf. Bostock v. Clayton County*, 140 S. Ct. 1731, 1741 (2020) ("It's no defense for the employer to note that, while he treated that individual woman worse than he would have treated a man, he gives preferential treatment to female employees overall.  The employer is liable for treating *this* woman worse in part because of her sex.").

19

adequately alleged that the Board discriminated against him by failing to pay him a *supplement* for the technical theater work he performed in the absence of a technical director. I would thus reverse the district court's dismissal of the Technical Supplement claim.

To allege a Title VII disparate treatment claim, a plaintiff must plead that his employer took an adverse action against him — namely, an action that "adversely affect[s] 'the terms, conditions, or benefits' of [his] employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (first alteration in original) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001)). Tabb alleges such an action. He alleges that, due to the Board's failure to hire a technical director, he regularly needed to perform significant additional work (managing "the lighting, sound, sets and other technical duties" for student productions) to fulfill his own role in directing those productions. Needing to perform such additional work would certainly adversely affect the conditions of a plaintiff's employment. *Cf. Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015).

According to the majority, Tabb failed to allege that the Board took an adverse action against him because he purportedly failed to plead that he *needed* to perform that technical work as a requirement of his job. But in fact, Tabb has alleged just that — he alleges that he has "been forced to do the work of two or three teachers in order to maintain the Hillside High School Drama Program." That allegation is enough to survive a motion to dismiss. It is certainly plausible to infer that, if nobody handled "the lighting, sound,

20

sets and other technical duties" for the productions, there would be no productions for Tabb to direct.

I also disagree with the majority that Tabb has failed to allege a valid comparator for this claim. To be sure, the majority correctly notes that Tabb "did not allege that *any* performing arts teacher in the School System, regardless of the teacher's race, received more than one supplement." Op. at 12. But that is not surprising given that Tabb has premised his claims on the allegation that white theater teachers at other schools *did* have the benefit of a technical director, and thus that they would not need to perform extra work that would necessitate a technical theater supplement in the first place. For that reason, I think that Tabb need not allege that the Board paid similarly situated white theater teachers a technical supplement. Rather, to defeat a motion to dismiss, Tabb must merely allege — as he has done — that the Board "has not forced white Theatre Directors in its comparable high school theatre programs to work the unreasonable and excessive number of extracurricular overtime hours that [he] has worked."

## C.

I would also reverse the district court's holding that the Durham School of the Arts ("DSA") was not a proper comparator for any of Tabb's claims. In determining that the DSA was not a proper comparator, the district court improperly weighed matters outside of the pleadings — namely, information found on the DSA's website — against Tabb's allegations. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 558 (4th Cir. 2013),

21

*abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015). The majority acknowledges that this was error but maintains it was harmless. I cannot agree.[4]

The majority first asserts that this error was harmless because the district court could have arrived at the same conclusion solely by consulting the complaint, reasoning that the complaint "supports the district court's conclusion that the [DSA's] specialized focus on arts and drama would require that it have enhanced staffing to serve that mission." Op. at 13. But in fact, the allegations in the complaint suggest just the opposite. Tabb alleges that the drama program at Hillside "has become one of the premier high school drama programs in the United States" and that Hillside "has produced at least as many (and in most years more) theatre productions than DSA." It is thus reasonable to infer that, even though the school district has not specifically labeled Hillside as a "drama" or "arts" school, Hillside's drama department would require a similar level of drama staffing as a school that has received such a label.

Nor would I hold that this error was harmless solely because the district court later reaffirmed its holding that the DSA was not a proper comparator when granting the Board's motion for summary judgment. *See* Op. at 14. Because the court rejected Tabb's attempt to rely on the DSA as a comparator at the motion-to-dismiss stage, it is not at all clear that

---

[4] Because I would affirm the court's grant of summary judgment on Tabb's Technical Staffing claim, any comparison to the DSA on that claim would be moot. But a comparison to the DSA would also be relevant to Tabb's Technical *Supplement* claim. Tabb alleges that the DSA had a white theater director and that it also employed technical directors. He could thus argue that, unlike white theater teachers at the DSA, he was forced to work extra hours and did not receive a supplement for that work.

the parties pursued the full discovery necessary to determine whether the DSA was a proper

comparator at the summary-judgment stage.

***

For the foregoing reasons, I respectfully concur in part and dissent in part.

23